UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| In re:<br><br>FAITH ELYZABETH ANTONIO,<br><br>Debtor. | ) | Case No: 8:20-BK-07637<br>Chapter 7 |
| DGP PRODUCTS INC., D/B/A NUMERIC RACING,<br>Plaintiff,<br><br>vs.<br><br>FAITH ELYZABETH ANTONIO,<br><br>Defendant. | ) | Adversary Case No: 8:20-ap-00537-CPM |

**DGP PRODUCTS INC.'S**
**MOTION FOR RULING ON OBJECTIONS TO THIRD PARTY DISCOVERY**

DGP Products Inc. d/b/a Numeric Racing ("**DGP**") hereby moves the Court to rule on the objections to third party discovery asserted by Faith Antonio ("**Debtor**") in Pasco County Circuit Court Case No. 20-CA-000889-CA-AXWS (the "**State Case**") and reiterated by Debtor's counsel in these proceedings at the Rule 16(f) conference of counsel. The purpose of this motion is to present to the court a matter material to the administration of this proceedings and ripe for adjudication, in an effort to expedite the discovery process.

1. On April 2, 2020, DGP commenced the State Case against Debtor seeking recovery for civil theft, fraudulent misrepresentation, unjust enrichment, and conversion. In the State Case, DGP seeks to recover more than $200,000 that Debtor stole, embezzled, converted, and misappropriated from DGP [The State Case remains pending, but is stayed by section 362.].

2. In August 2020, DGP served upon Debtor notices of non-party production without deposition relevant to the issues presented in the State Case, including subpoenaes duces tecum directed to QuickBooks, Amazon, Capital One Auto Finance, several of Debtor's credit card issuers, and others, in an effort to determine the full extent of Debtor's issued theft and other misconduct.

3. In response to the discovery requests issued in the State Case, Debtor filed three separate, rambling objections to the notices of non-party production (the "**August 31 Objections**"). The August 31 Objections are attached to this Motion as Composite Exhibit "**A**". In the August 31 Objections, Debtor argued that (a): DGP was seeking its own financial information (and thus a subpoena was not needed); and (b) there was no nexus between Debtor's financial information and the records sought. These statements are clearly false because DGP's discovery request sought records for relating to accounts associated with Debtor that DGP can tell from its own accounting records received payments or deposits from DGP accounts.

4. On September 3, 2020, DGP issued in the State Case subpoenaes for deposition duces tecum directed to the same non-parties. The subpoenas contained identical document requests to the notices of non-party production served previously.

5. On September 16, 2020, Debtor objected to the subpoenaes to non-parties on the basis that the depositions were not cleared with her attorney. The September 16 objection is attached as Exhibit "**B**".

6. Debtor resisted all efforts to resolve the objection in the State Case without a hearing that Debtor's counsel declined to clear or set. Debtor made no efforts to set a hearing on any of Debtor's objections.

7. On September 25, 2020, DGP was finally able to schedule a hearing on Debtor's objections for October 13, 2020 at 10:45 a.m.

8. On October 13, 2020 at 10:38 a.m., (seven minutes before the hearing on Debtor's discovery objections), Debtor filed in the State Case a suggestion of bankruptcy. Debtor's filing of the bankruptcy petition is merely another attempt to delay the inevitable disposition of State Case, restrict DGP's efforts to determine the ultimate disposition of its funds, and conceal the frauds committed.

9. On October 15, 2020, DGP commenced this proceeding to prevent Debtor from discharging of the repayment obligations that Debtor owes to DGP based on fraud, theft, and misappropriation.

10. On November 3, 2020, counsel for DGP and counsel for Debtor met for their Rule 16(f) conference. At this conference, the parties discussed the objections to the subpoenaes issued in the State Case. Debtor's only objection regarding the requested non-party discovery is the right to financial privacy and the corresponding concern regarding confidentiality of personal financial records. DGP has attempted to address and resolve Debtor's concerns through adoption of a confidentiality agreement to be presented to and approved by the Court. DGP presented multiple times successive draft of a proposed Confidentiality Agreement that would protect from unauthorized disclosure the documents produced. The most recent version of the proposed Confidentiality Agreement is attached as Exhibit "**C**". Debtor's counsel has outright rejected any and all consideration of a confidentiality agreement or any other resolution. DGP has identified the relevancy of the discovery sought, presented the legal basis for its entitlement to the discovery

sought, proposed alternative means of accomplishing the desired result in the least intrusive manner possible, and even prepared documents designed to relieve any burden on Debtor. All to NO AVAIL.

11. Rather than taking the time and incurring the expense to reissue, and re-serve the non-party subpoenaes, only to have the same objections interposed by Debtor, DGP asks that this Court rule on the existing objections to subpoenas directed to:

a. Amazon.com Inc.,

b. Intuit Inc.,

c. Synovus Bank,

d. Best Buy Co. of Minnesota, Inc.,

e. Merrick Bank,

f. Citigroup Inc.,

g. Credit One Financial, and

h. Capital One Auto Services LLC.

12. DGP also anticipates sending additional subpoenas to Paypal, Wells Fargo, and other financial institutions identified in the course of discovery that may have records relevant to the claim asserted.

13. Because similar objections will be raised again, DGP requests the Court make a broader pronouncement regarding the scope of Debtor's right to financial privacy and impose procedures designed to protect Debtor's legitimate concerns.

14. Efficiency, economy, and fairness dictate that the Court consider, address, and implement appropriate procedures that will balance Debtor's right to privacy with DGP's need for and entitlement to discovery, including entry of an order sufficient to satisfy the prerequisite of Gramm-Leach-Bliley Act to enable the non-parties subject thereto to produce documents without fear of violating the law.

*/s/ Stanford R. Solomon*
Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147
**THE SOLOMON LAW GROUP, P.A.**
1881 West Kennedy Boulevard, Suite D
Tampa, Florida 33606-1611
(813) 225-1818 (Tel)
(813) 225-1050 (Fax)
Attorneys for **DGP PRODUCTS INC.**

## Certificate of Service

I hereby certify that I am admitted to the bar of this Court. I further certify that the foregoing **DGP PRODUCTS INC.'S MOTION FOR RULING ON OBJECTIONS TO THIRD PARTY DISCOVERY** was filed and then served by CM/ECF transmission on November 19, 2020 upon the following:

Gino A. Megna
McGuire Law Offices
1173 N.E. Cleveland St.
Clearwater, FL 33755
**Attorney for Defendant**

United States Trustee - TPA7/13
Timberlake Annex, Ste. 1200
501 E. Polk Street
Tampa, FL 33602
**U.S. Trustee**

Christine L Herendeen
P.O. Box 152348
Tampa, FL 33648
**Trustee**

*/s/ Stanford R. Solomon*
Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147
**THE SOLOMON LAW GROUP, P.A.**

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

DGP PRODUCTS INC., d/b/a,
NUMERIC RACING
Plaintiff,

Vs. CASE NO: 2020-CA-0889 CCAX
WS

FAITH ELYZABETH ANTONIO,
Defendant.
_________________________________/

**OBJECTION TO NON PARTY SUBPOENAS FOR PRODUCTION OF DOCUMENTS FROM QUICKBOOKS, SYNOVUS AND AMAZON**

COMES NOW, Defendant FAITH ELELYZABETH ANTONIO, by and through the undersigned attorney, and hereby enters this Objection to the below-referenced Subpoenas for Production of Documents and Things, and as grounds therefore would show:

1. On August 20, 2020, Plaintiff filed notice of non party subpoena that purports to seek records from Quickbooks (Intuit, Inc.), Synovus and Amazon. (Intuit, Inc.) from its own account.

2. Plaintiff seeking a subpoena from its own account is troublesome, not only because it indicates it doesn't keep track of its own records, but Quickbooks should be limited to Plaintiff's own records (and not any account opened by the individuals named as "employees").

3. Plaintiff further has no proof whatsoever that Ms. Antonio ever worked for it, and has no right to employment records maintained by Quickbooks on any matter (that doesn't appear to be in the possession, custody or control of Plaintiff. That is, there is a possibility of Quickbooks providing documents beyond that which Plaintiff seeks as to its own accounting and, thereby, an invasion of privacy).

4. This, again, is troubling because Plaintiff should have possession, custody and control of its own records, particularly those of its purported, alleged employees.

5. Defendant was never an employee to Plaintiff.

6. In more conflicting statements by Plaintiff, Plaintiff overlooks the fact that

**Composite Exhibit "A"**

Plaintiff attached quickbook records to its complaint as Exhibit B.

7. Moreover, as argued in Defendant's Motion to Dismiss Sham Pleading and the Motion for Sanctions pursuant to 57.105, Plaintiff states it is the plaintiff while its own pre-suit, condition precedent letter pursuant to 57.105 indicates that Defendant's former boyfriend is the real party in interest.

8. This case is about an ex-boyfriend "getting back" at a former girlfriend by claiming she stole money from him that he willfully gave her.

9. This is the conclusion that law enforcement has come to when viewing the totality of the circumstances by considering everything, including Plaintiff's bank records, the ex-boyfriend's (who owns Plaintiff) facebook posts showing he purchased plastic surgery for Defendant, Ms Antonio.

10. To exacerbate this harassment by Plaintiff, it now seeks records from its own accounts with Quickbooks, Amazon and Synovus.

11. This indicates the impairment of this case promulgated by the underlying facts, a boyfriend who coming off of an abuse of prescription medication, ends up an ex-boyfriend and claiming falsely that his ex-girlfriend (Ms. Antonio) stole things from him.

12. Further, this is not the first time the ex-boyfriend who owns Plaintiff has done this; he has done this it in at least one other previous relationship (*modus operandi*).

Wherefore, Defendant asks the court to quash the subpoenas and allow the case to move forward.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via eservice to all persons entitled to receive eservice on this on this 27th day of August, 2020.

Respectfully submitted,

/s/ BRENDAN R. RILEY
Florida Bar # 87954
5435 Main Street
New Port Richey, Florida 34652
(727) 312-3748
BRR@BetterCallBrendan.com

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

DGP PRODUCTS INC., d/b/a,
NUMERIC RACING
Plaintiff,

Vs. CASE NO: 2020-CA-0889 CCAX
WS

FAITH ELYZABETH ANTONIO,
Defendant.
_______________________________________/

**AMENDED OBJECTION TO NON PARTY SUBPOENAS FOR PRODUCTION OF DOCUMENTS FROM PLAINTIFF'S OWN ACCOUNTS WITH QUICKBOOKS, SYNOVUS, AMAZON, BEST BUY, CITIGROUG, MERITT BANK, CREDIT ONE, AND CAPITAL ONE AUTO FINANCE**

COMES NOW, Defendant FAITH ELELYZABETH ANTONIO, by and through the undersigned attorney, and hereby enters this Objection to the below-referenced Subpoenas for Production of Documents and Things, and as grounds therefore would show:

1. On August 20, 2020, Plaintiff filed notice of non party subpoena that purports to seek records from its own accounts, to wit: Plaintiff's Quickbooks (Intuit, Inc.), Plaintiff's Synovus Bank Account, Plaintiff's Amazon account, Plaintiffs Best Buy account, Plaintiff's Citigroup account, Plaintiff's Meritt Bank account, Plaintiff's Credit One account, and Capital One Auto Finance from its own account.

2. This is an admission that Plaintiff has no idea what is going on in its own business, but it has filed a lawsuit lacking bases in fact or law, before obtaining its own records. Not even the business, owned by one person, the Defendant's ex-boyfriend who won't stop harassing Defendant, Ms. Antonio.

3. Plaintiff seeking a subpoena from its own account is troublesome, not only because it indicates it doesn't keep track of its own records, but Quickbooks should be limited to Plaintiff's own records (and not any account opened by the individuals named as "employees").

4. Plaintiff further has no proof whatsoever that Ms. Antonio ever worked for it, and

has no right to employment records maintained by Quickbooks on any matter (that doesn't appear to be in the possession, custody or control of Plaintiff – the real possibility of Quickbooks providing documents beyond that which Plaintiff seeks as to its own accounting and, thereby, an invasion of privacy).

5. This, again, is troubling because Plaintiff should have possession, custody and control of its own records, particularly those of its purported, alleged employees.

6. Defendant was never an employee to Plaintiff.

7. In more conflicting statements by Plaintiff, Plaintiff overlooks the fact that Plaintiff attached quickbook records to its complaint as Exhibit B – more than once.

8. Moreover, as argued in Defendant's Motion to Dismiss Sham Pleading and the Motion for Sanctions pursuant to 57.105, Plaintiff states it is the plaintiff while its own pre-suit, condition precedent letter pursuant to 57.105 indicates that Defendant's former boyfriend is the real party in interest.

9. The real party in interest, Defendant's boyfriend appears to avoid personal exposure to a personal lawsuit by having his corporation as the Plaintiff, but even the corporation's spending is not just corporate spending, but personal spending on himself, his daughter, his former girlfriend, Defendant, Ms. Antonio. Such that Plaintiff itself is an alter ego of the ex-boyfriend, Plaintiff. Any money from Plaintiff, her family, his personal possessions, his personal meals, his personal life (household items and pleasures).

10. This case is about an ex-boyfriend "getting back" at a former girlfriend by claiming she stole money from him that he willfully gave her.

11. This is the conclusion that law enforcement has come to when viewing the totality of the circumstances by considering everything, including Plaintiff's bank records, the ex-boyfriend's (who owns Plaintiff) facebook posts showing he purchased plastic surgery for Defendant, Ms Antonio.

12. Ms. Antonio suggests to the Court that law enforcement had the ability to obtain the records, but, if it didn't have every single account mentioned by Plaintiff now, it is because there simply is no evidence that Ms. Antonio was an employee or that she obtained funds from Plaintiff/alter ego of ex-boyfriend. Rather, there is evidence that the ex-boyfriend has done this before.

13. To exacerbate this harassment by Plaintiff, it now seeks records from its own

accounts mentioned above.

14. This indicates the impairment of this case promulgated by the underlying facts, a boyfriend who coming off of an abuse of prescription medication, ends up an ex-boyfriend and claiming falsely that his ex-girlfriend (Ms. Antonio) stole things from him. The recent patterns in Plaintiff's (ex-boyefriend) patterns in life seem to provoke the need for a mental health evaluation (MMPI) to determine if his short term memory is intact or whether he has a memory deficit from prescription medication such as barbiturates, benzodiazepines, cannabis or opiates. If prescribed for a disorder, whether pain or related to other neuro-psychological reasons, memory is an inherent deficit of this type of gaba receptor activity.

15. Further, this is not the first time the ex-boyfriend who owns Plaintiff has done this; he has done this it in at least one other previous relationship (*modus operandi*).

Wherefore, Defendant asks the court to quash the subpoenas and allow the case to move forward.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via eservice to all persons entitled to receive eservice on this on this 31st day of August, 2020.

Respectfully submitted,

/s/ BRENDAN R. RILEY
Florida Bar # 87954
5435 Main Street
New Port Richey, Florida 34652
(727) 312-3748
BRR@BetterCallBrendan.com

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

DGP PRODUCTS INC., d/b/a,
NUMERIC RACING
Plaintiff,
Vs. CASE NO: 2020-CA-0889 CCAX
WS

FAITH ELYZABETH ANTONIO,
Defendant.
_________________________________/

**SECOND AMENDED OBJECTION TO NON PARTY SUBPOENAS FOR PRODUCTION OF DOCUMENTS FROM PLAINTIFF'S OWN ACCOUNTS WITH QUICKBOOKS, SYNOVUS, AMAZON, BEST BUY, CITIGROUG, MERITT BANK, CREDIT ONE, AND CAPITAL ONE AUTO FINANCE**

COMES NOW, Defendant FAITH ELELYZABETH ANTONIO, by and through the undersigned attorney, and hereby enters this Objection to the below-referenced Subpoenas for Production of Documents and Things, and as grounds therefore would show:

1. On August 20, 2020, Plaintiff filed notice of non party subpoena that purports to seek records from its own accounts, to wit: Plaintiff's Quickbooks (Intuit, Inc.), Plaintiff's Synovus Bank Account, Plaintiff's Amazon account, Plaintiffs Best Buy account, Plaintiff's Citigroup account, Plaintiff's Meritt Bank account, Plaintiff's Credit One account, and Capital One Auto Finance from its own account.

2. This is an admission that Plaintiff has no idea what is going on in its own business, but it has filed a lawsuit lacking bases in fact or law, before obtaining its own records. Not even the business, owned by one person, the Defendant's ex-boyfriend who won't stop harassing Defendant, Ms. Antonio.

3. Plaintiff seeking a subpoena from its own account is troublesome, not only because it indicates it doesn't keep track of its own records, but Quickbooks should be limited to Plaintiff's own records (and not any account opened by the individuals named as "employees").

4. Plaintiff further has no proof whatsoever that Ms. Antonio ever worked for it, and

has no right to employment records maintained by Quickbooks on any matter (that doesn't appear to be in the possession, custody or control of Plaintiff – the real possibility of Quickbooks providing documents beyond that which Plaintiff seeks as to its own accounting and, thereby, an invasion of privacy).

5. This, again, is troubling because Plaintiff should have possession, custody and control of its own records, particularly those of its purported, alleged employees.

6. Defendant was never an employee to Plaintiff.

7. In more conflicting statements by Plaintiff, Plaintiff overlooks the fact that Plaintiff attached quickbook records to its complaint as Exhibit B – more than once.

8. Moreover, as argued in Defendant's Motion to Dismiss Sham Pleading and the Motion for Sanctions pursuant to 57.105, Plaintiff states it is the plaintiff while its own pre-suit, condition precedent letter pursuant to 57.105 indicates that Defendant's former boyfriend is the real party in interest.

9. The real party in interest, Defendant's boyfriend appears to avoid personal exposure to a personal lawsuit by having his corporation as the Plaintiff, but even the corporation's spending is not just corporate spending, but personal spending on himself, his daughter, his former girlfriend, Defendant, Ms. Antonio. Such that Plaintiff itself is an alter ego of the ex-boyfriend, Plaintiff. Any money from Plaintiff, her family, his personal possessions, his personal meals, his personal life (household items and pleasures).

10. This case is about an ex-boyfriend "getting back" at a former girlfriend by claiming she stole money from him that he willfully gave her.

11. This is the conclusion that law enforcement has come to when viewing the totality of the circumstances by considering everything, including Plaintiff's bank records, the ex-boyfriend's (who owns Plaintiff) facebook posts showing he purchased plastic surgery for Defendant, Ms Antonio.

12. Ms. Antonio suggests to the Court that law enforcement had the ability to obtain the records, but, if it didn't have every single account mentioned by Plaintiff now, it is because there simply is no evidence that Ms. Antonio was an employee or that she obtained funds from Plaintiff/alter ego of ex-boyfriend. Rather, there is evidence that the ex-boyfriend has done this before.

13. To exacerbate this harassment by Plaintiff, it now seeks records from its own

accounts mentioned above.

14. This indicates the impairment of this case promulgated by the underlying facts, a boyfriend who coming off of an abuse of prescription medication, ends up an ex-boyfriend and claiming falsely that his ex-girlfriend (Ms. Antonio) stole things from him. The recent patterns in Plaintiff's (ex-boyefriend) patterns in life seem to provoke the need for a mental health evaluation (MMPI) to determine if his short term memory is intact or whether he has a memory deficit from prescription medication such as barbiturates, benzodiazepines, cannabis or opiates. If prescribed for a disorder, whether pain or related to other neuro-psychological reasons, memory is an inherent deficit of this type of gaba receptor activity.

15. Further, this is not the first time the ex-boyfriend who owns Plaintiff has done this; he has done this it in at least one other previous relationship (*modus operandi*).

16. To the extent than any of the subpoenas seeks the accounting information of Defendant, Ms. Antonio individually, there is no nexus between these subpoenaes and the personal, privacy-protected information of Ms. Antonio's that Plaintiff seeks.

17. Plaintiff, owned by Ms. Antonio's ex-boyfriend, has sued in a corporate name against, according to Plaintiff, an employee.

18. Now it seeks the personal, private records of Ms. Antonio without any legal authority to so do.

19. It puts Ms. Antonio's personal email address onto the public record, harassing her in what is not at all related to litigation privilege, but a litigation of pure harassment.

20. That is, Plaintiff's claim is a ruse, is being used for a purpose other than for which it was intended, an abuse of process.

21. The complaint and subpoenas are both processes being filed without merit, but just because they want to ask for something that is not permitted under rules of procedure or case law, it does not mean that it should be done - while plastering Ms. Antonio's personal information all over a public record. Plaintiff is meritlessly on the verge of issuing a subpoena to Defendant's personal accounts without even setting forth any evidence that Ms. Antonio was ever an employee. This is not a personal injury claim in which the evidence is directly related to the discovery subpoena – i.e. medical records upon which Plaintiff will base its whole claim. This claim, however, is directly linked to a personal smear (defamation) against Defendant by Plaintiff's owner, her ex-boyfriend.

22. This is the anecdotal evidence that will seize the day, and Plaintiff should go henceforth without day, and pay Ms. Antonio's attorney's fees pursuant to 57.105(1) or (4).

23. All evidence concludes that Ms. Antonio was not an employee, yet Plaintiff continues this action.

Wherefore, Defendant asks the court to quash the subpoenas, dismiss the complaint with prejudice and allow the case to move forward with Plaintiff being taxed her attorney's fees and costs in defending a claim lacking merit in law or fact.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via eservice to all persons entitled to receive eservice on this on this 31st day of August, 2020.

Respectfully submitted,

/s/ BRENDAN R. RILEY
Florida Bar # 87954
5435 Main Street
New Port Richey, Florida 34652
(727) 312-3748
BRR@BetterCallBrendan.com

Filing # 113474354 E-Filed 09/16/2020 03:18:46 PM

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

DGP PRODUCTS INC., d/b/a,
NUMERIC RACING
Plaintiff,

Vs. CASE NO: 2020-CA-0889 CCAX WS

FAITH ELYZABETH ANTONIO,
Defendant.
_______________________________________/

**OBJECTION TO PLAINTIFF'S NON-PARTY NOTICES OF TAKING DEPOSITIONS FILED SEPTEMBER 3, 2020 AND AMENDED NOTICE OF TAKING DEPOSITION FILED SEPTEMBER 10, 2020**

COMES NOW, Defendant FAITH ELYZABETH ANTONIO, by and through the undersigned attorney, and hereby enters this Objection to the below-referenced Notices for Deposition, and as grounds therefore would show:

1. Plaintiff filed notices of subpoenas to non-parties, to which Ms. Antonio objected.

2. However, rather than set the objection for hearing to determine whether the subject matter is relevant, among other things, Plaintiff filed notices of taking depositions on certain dates and times without contacting Ms. Antonio's counsel in this matter to coordinate the depositions.

3. Ms. Antonio's counsel has a hearing in a criminal matter the same morning as these depositions.

4. Rule B.1. of the Rules of Professional Courtesy from the Sixth Judicial Circuit's Administrative Order 2008-077 requires that attorney's attempt to coordinate all deposition with all interested parties.

5. Not only has Plaintiff obfuscated the purpose of the notice and objection period of third party discovery, but it now seeks to obtain the same material without ever contacting Ms. Antonio's counsel (the only defendant in this case who is also represented by counsel).

**Exhibit "B"**

**WHEREFORE**, Defendant asks that the court issue an order granting this objection, cancelling the depositions and awarding Ms. Antonio's attorney's fees for having to file this objection.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via eservice to all persons entitled to receive eservice on this on this 16th day of September, 2020.

Respectfully submitted,

/s/ BRENDAN R. RILEY
Florida Bar # 87954
5435 Main Street
New Port Richey, Florida 34652
(727) 312-3748
BRR@BetterCallBrendan.com
Attorney for the Defendant

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| IN RE:<br><br>FAITH ELYZABETH ANTONIO,<br><br>Debtor. | CASE NO. 8:20-BK-07637<br><br>CHAPTER 7 |

DRAFT

**CONFIDENTIALITY AGREEMENT**

DGP Products Inc. d/b/a Numeric Racing ("**DGP**") and Faith Elyzabeth Antonio ("**Antonio**") hereby enter into this Confidentiality Agreement that shall bind the parties and all other persons and firms affiliated or associated with the parties for purposes of the above-styled action (the "**Lawsuit**").

Background

(a) DGP has alleged that Antonio has committed theft and misappropriation of its business assets during her employment with DGP.

(b) DGP seeks discovery of Antonio's personal records, including her financial records, in order to determine the extent of Antonio's theft.

(c) Antonio seeks to prevent public disclosure of such personal information outside of the context of the Lawsuit or related criminal charges, investigations, or proceedings.

Terms

Accordingly, the parties hereby agree that the restrictions and procedures set forth herein shall govern discovery in the Lawsuit, absent a subsequent written and manually-signed agreement by the parties or the entry of an Order in the Lawsuit.

**(1) Confidential Information.** "Confidential Information" means and includes all information and documents designated as "CONFIDENTIAL" by the producing party that the

**Exhibit "C"**

producing party reasonably and in good faith believes to constitute or to encompass: (a) matters prohibited from disclosure by law or by contract; (b) financial information that a party considers to be confidential; (c) financial information relating to parties or non-parties; (d) income tax returns (including attached schedules and forms relating to non-parties); and (e) personnel or employment records relating to non-parties.

**(2) Designation.**

(a) A party may designate a document as Confidential Information for protection under this Agreement by placing on or affixing to the document (and all copies) the word, "CONFIDENTIAL" in a manner that will not interfere with the legibility of the document or, in the case of electronic spreadsheets produced in native form, on the CD/DVD case or on the transmittal correspondence. "Copies" include electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. The marking "CONFIDENTIAL" shall be applied before or at the time the documents are produced or disclosed.

(b) A third-party providing information or producing documents, and a party upon receipt of such documents, may designate such information or documents as "CONFIDENTIAL".

**(3) Special Procedures for HIPAA-Protected Information.** DGP and Antonio acknowledge that some material designated as "CONFIDENTIAL" could contain information protected by the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), including but not limited to the name(s) of Antonio's health care providers, information regarding Antonio's health condition and diagnoses, and the name and dosage of medication(s) taken by Antonio. To the extent that any document designated as "CONFIDENTIAL" could contain

DRAFT

information protected by HIPAA, the following procedures shall apply:

**(a) HIPAA Material in Documents Produced by Antonio.** If, in response to a discovery request, Antonio identifies "CONFIDENTIAL" documents that contain HIPAA-protected information, Antonio may redact such HIPAA-protected information prior to production to DGP.

**(b) Designation for Third Party Records Requests.** In the event that DGP requests any information from a third party, DGP shall alert Antonio in advance of issuing discovery requests to some third party(ies) the identities of such third party(ies). Antonio shall have three calendar days to review such list and to indicate which third parties may have HIPAA-protected information. For third parties whom Antonio has timely designated as having HIPPA-protected information, DGP shall either (a) direct the third party to produce its documents directly to Antonio or (b) transmit to Antonio all records DGP receives from such third parties (without review by DGP) for redaction of HIPAA-protected information prior to production to DGP. Under either transmittal method, Antonio has seven calendar days from the date on which Antonio receives the records to redact HIPAA-protected information and to transmit to DGP the records.

**(4) Depositions.** Deposition testimony may be designated as confidential orally on the record immediately before or after the testimony to be so designated. Up to 30 days following receipt of a deposition transcript, a party may serve a Notice of Designation to all parties to designate specific portions of the testimony that the party desires to be designated as Confidential Information; thereafter, those portions identified in the Notice of Designation (or designated contemporaneously on the record) shall be protected from disclosure or use by this Agreement. The failure to designate on the record during the deposition or thereafter serve a timely Notice of

Designation constitutes a waiver of any designation of testimony taken in that deposition as Confidential Information, unless otherwise agreed or as provided in any Order entered in the Lawsuit.

**(5) Protection of Confidential Material.**

(a) **General Protections.** Confidential Information shall not be used or disclosed or disseminated at any time in any manner by a party, by counsel for a party or by any other person identified in subparagraph (b) below, for any purpose whatsoever other than for proper purposes in proceedings in or directly related to this Lawsuit or any criminal charges, investigations, or proceedings. Confidential Information shall not be filed in this Lawsuit or otherwise made part of the court record except pursuant to a court order entered in the Lawsuit pursuant to the Middle District of Florida's Local Rule 1.09.

(b) **Limited Third-Party Disclosures.** The parties and counsel for the parties shall not disclose or permit the disclosure or dissemination of any Confidential Information to any third person or entity except as set forth hereinbelow. Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

(i) **Counsel**. Counsel for the parties and employees of counsel who have responsibility in connection with the dissolution of marriage matter.

(ii) **Parties.** Confidential Information may be disclosed to individual parties and employees of a party, but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of a proceeding in the Lawsuit.

(iii) **Court personnel.** The court and persons employed directly by the Court.

DRAFT

(iv) **Court Reporters and Recorders.** Court reporters engaged for depositions in the Lawsuit.

(v) **Contractors.** Those persons specifically engaged by counsel of record in this Lawsuit for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored information and documents.

(vi) **Law Enforcement.** All law enforcement officers and associated personnel that may be involved in any criminal charges, investigations, or proceedings.

(vii) **Outside Consultants and Experts**. Outside consultants, investigators, or experts specifically engaged, retained or employed by the parties or by counsel of record in this Lawsuit to assist in the preparation and trial of this Lawsuit, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound.

(viii) **Witnesses at depositions**. Before and during their respective depositions, witnesses in this Lawsuit to whom disclosure is reasonably necessary. Witnesses shall not retain a copy of documents containing Confidential Information; provided, however, that witnesses may receive but <u>not</u> retain a copy of all exhibits marked at their respective depositions solely for purposes of and in connection with witness review of the transcripts for use in court. Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Information

DRAFT

pursuant to the process set out in this Agreement must be bound separately by the court reporter and shall not be disclosed to anyone except as permitted by this Agreement.

(ix) **Author or recipient.** The author or initially-designated recipient of the document (not including a person who received the document in connection with this Lawsuit).

(x) **Others by Consent**. Other persons by prior written consent of the producing party or pursuant to an Order of the court.

**(6)** **Control of Documents**. Counsel of record for the parties shall make diligent efforts to prevent unauthorized or inadvertent disclosure of Confidential Information.

**(7)** **Inadvertent Failure to Designate.**

(a) **Non-Privileged Documents**. An inadvertent failure to designate information or a document as Confidential Information does not waive the right to so designate the document. If a party designates a document as Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a sincere effort to assure that the information and document is protected from disclosure in accordance with this Agreement. No party shall be found to have violated this Agreement for failing to maintain the confidentiality of material during a time when that material has not been designated as Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Information.

(b) **Privileged Documents.** If information or a document subject to a claim of attorney-client privilege, work product protection, or any other privilege or immunity

DRAFT

(other than financial privilege) is or has been produced inadvertently in this Lawsuit, such production shall not prejudice or otherwise constitute a waiver of or an estoppel as to any claim of privilege, work product protection, or other ground for withholding production or disclosure to which any producing party would otherwise be entitled. Instead, the information and document shall be treated as if there were no disclosure. If any producing party or producing non-party identifies production materials as privileged information that was produced inadvertently, the recipient of the materials shall forthwith: (1) return, sequester, or destroy the specified information or document and any copies in his/her possession or control; (2) delete any versions of the materials on any database they maintain; (3) retrieve all electronic and paper copies of the materials provided to any third parties, including experts; (4) destroy any notes that reveal the substance of the protected information; and (5) make no use or dissemination of the information or document contained in the materials. After returning/destroying all of the materials other than one paper copy, the party returning/destroying the materials may challenge the privilege designation by application to the court.

**(8) Filing of Confidential Information.** This Agreement does not itself authorize the filing of any document under seal. A party shall not file a document under seal without first addressing the continued reasonable protection of the confidentiality of the filed materials, making a showing of particularized need, and obtaining an order under Middle District of Florida's Local Rule 1.09.

**(9) Challenges by a Party to Designation as Confidential Information.** The designation of any material or document as Confidential Information is subject to challenge by any party at any time. The following procedure shall apply to any such challenge:

DRAFT

(a) **Meet and Confer.** A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel of record for the designating party. The challenging party must explain the basis for the belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation and, if no change in designation is offered, to explain the basis for the designation.

(b) **Judicial Intervention.** A party that elects to challenge a confidentiality designation may apply to the court in the lawsuit by verified motion that identifies the challenged material and sets forth in detail the basis for the challenge to the confidentiality designation. Each motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements hereof. The burden of persuasion in any such challenge shall be on the challenging party. Until the court rules on the challenge, all parties shall continue to treat the materials as Confidential Information pursuant to this Agreement.

**(10) Use of Confidential Documents or Information at Trial.** Nothing in this Agreement shall be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or that anticipates that another party may present Confidential Information at a hearing or trial shall bring that issue to the court's attention by motion or in a pretrial memorandum without disclosing the Confidential Information. The court may establish the procedure governing the use of such documents or information at trial.

DRAFT

**(11) Confidential Information Subpoenaed or Ordered Produced in Other Civil Litigation.**

(a) If a receiving party is served with a subpoena or an order entered in another civil case that would compel disclosure of any information or document designated in this Lawsuit as Confidential Information, the receiving party shall so notify the designating party, in writing, within three business days after receiving the subpoena or order. Such notification shall include a copy of the subpoena or order.

(b) The receiving party also shall inform in writing the party who caused the subpoena or order to issue in the other civil case that some or all of the material covered by the subpoena or order is the subject of this Agreement, and must transmit a copy of this Agreement to the party in the other civil case that caused the subpoena or order to issue.

(c) The purpose of imposing these duties is to alert the interested persons to the existence of this Agreement and to afford the designating party in this Lawsuit an opportunity to try to protect Confidential Information in the civil court from which the subpoena or order issued. The designating party shall bear the burden of seeking protection from that civil court of Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this Lawsuit to disobey a lawful directive from another court, civil or criminal. The obligations set forth in this paragraph remain in effect while the party has in his/her possession, custody or control Confidential Information designated by another party to this Lawsuit.

**(12) Challenges by Members of the Public to Sealing Agreements.** A non-party or interested member of the public has a right to challenge the sealing of particular documents that

DRAFT

have been filed under seal, and the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

**(13) Obligations on Conclusion of Proceedings.**

(a) **Agreement Continues in Force.** Unless otherwise agreed or ordered, this Agreement shall remain continuously in force without termination after dismissal and after entry of any judgment or terminating order.

(b) **Obligations at Conclusion of Lawsuit.** Within 30 days after conclusion of all proceedings pertaining to the Lawsuit, including any appeals and/or related criminal investigations, cases, and appeals, all Confidential Information marked "CONFIDENTIAL" pursuant to this Agreement, including copies, shall be destroyed, and each party shall so certify under oath to the court and to all other parties in writing through their respective counsel.

(c) **Retention of Work Product and Documents Constituting Counsel's File.** Notwithstanding the above requirements to return or destroy documents, counsel of record may retain attorney work product, including an index that refers or relates to designated Confidential Information and copies of any court filings, deposition or hearing transcripts and exhibits, and documents produced in discovery. Any retained Confidential Information shall continue to be controlled by and subject to this Agreement. An attorney may use his or her work product (but not Confidential Information) in subsequent litigation, provided that its use does not us or disclose any Confidential Information.

**(14) No Prior Judicial Determination.** This Agreement is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material

DRAFT

designated Confidential Information by counsel or by the parties is entitled to protection until the court rules on a specific document or matter.

**(15) Persons Bound.** This Agreement shall be binding upon all counsel of record and their respective law firms, the parties, and all persons made subject to this Agreement by its terms.

Dated:____________________, 2020.

| | |
|---|---|
| ______________________________<br>**AUTHORIZED REPRESENTATIVE OF DGP PRODUCTS INC. D/B/A NUMERIC RACING**<br><br>______________________________<br>Stanford R. Solomon<br>ssolomon@solomonlaw.com<br>Florida Bar No. 302147<br>Katherine M. Johnson<br>kjohnson@solomonlaw.com<br>Florida Bar No. 1011648<br>**THE SOLOMON LAW GROUP, P.A.**<br>1881 West Kennedy Boulevard, Suite D<br>Tampa, Florida 33606-1611<br>(813) 225-1818 (Telephone)<br>(813) 225-1050 (Facsimile)<br>**Counsel of Record for DGP Products Inc., d/b/a Numeric Racing** | ______________________________<br>**FAITH ELYZABETH ANTONIO**<br><br>______________________________<br>Gino A. Megna<br>gino.megna@tampabay.rr.com<br>Florida Bar No. 121597<br>**MCGUIRE LAW OFFICE, P.A.**<br>1173 NE Cleveland St.<br>Clearwater, FL 33755-4815<br>(727) 446- 7659 (Telephone)<br>(727) 446- 0905 (Facsimile)<br>**Counsel of Record for Faith Elyzabeth Antonio** |

DRAFT

**ATTACHMENT "A"**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| IN RE:<br><br>FAITH ELYZABETH ANTONIO,<br><br>Debtor. | CASE NO. 8:20-BK-07637<br><br>CHAPTER 7 |

**AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Confidentiality Agreement dated _________________ in the above-styled lawsuit, understands fully the terms thereof, and agrees unconditionally to be bound by its terms. The undersigned submits to the jurisdiction of the U.S. District Court for the Middle District of Florida, Tampa Division in matters relating to the Agreement and understands fully that the terms of the Agreement restrict severely the use or dissemination of materials (information and documents) designated as Confidential Information. Specifically, the undersigned commits absolutely to abide by the Confidentiality Agreement and to forever refrain from using or disseminating any information or documents that are designated as Confidential Information. The undersigned promises not to disclose any such Confidential Information, except only as explicitly authorized by this Agreement or by an Order of the Court in the Lawsuit.

The undersigned acknowledges that violation of the Agreement may result in serious penalties and possibly contempt of court.

DRAFT

Date:________ ____________________________________
Signature

Name: ____________________________________

Job Title: ____________________________________

Employer: ____________________________________

Business Address: ____________________________________

____________________________________

____________________________________

DRAFT