Filed
AUG 11 2021
CLERK, US BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
Tampa DIVISION

16 Pages Scanned by EM

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Via Email

IN RE:

| | |
|---|---|
| FAITH ELYZABETH ANTONIO,<br>Debtor | Case No. 8:20-bk-07637<br>Chapter 7 |
| DGP PRODUCTS INCS, DBA NUMERIC RACING<br>Plaintiff | Adversary Case No. 8:20-ap-00537-CPM |
| vs. | |
| FAITH ELYZABETH ANTONIO,<br>Defendant | |

**DEFENDANT'S STATEMENT OF NON-CONSENT**
**TO FINAL ORDERS AND JUDGMENTS**

COMES NOW, Faith Elyzabeth Antonio ("**Defendant**"), as pro se, hereby notifies this Honorable Court of non-consent to final orders and judgments as she had submitted in her Answer to DGP Products, Inc.'s ("**Plaintiff**") Complaint.

1. On October 13, 2020, Defendant voluntarily filed her petition under Chapter 7, staying the State Court Action (the "**State Action**") in Pasco County.
2. Plaintiff did not file to remove the State Action where Plaintiff demanded a jury trial, attached hereto Exhibit "**A**".
3. The State Action relates to accusations of Civil Theft, Conversion, and Unjust Enrichment.
4. On October 15. 2020, Plaintiff filed its Adversary Complaint (the "**Complaint**") to Determine the Dischargeability of a Debt

5. In the Complaint, Plaintiff pleads:

> This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) to determine the dischargeability of particular debts (¶ 4). To the extent that this Court determines that this matter is not a core proceeding, DGP consents to the Court's exercise of jurisdiction to enter a final judgment herein (¶ 5).

6. On October 28, 2020, Defendant submits her Answer and responds: Denied [D.E. 5 ¶ 5].
7. The conduct of Daniel Geberth that is currently being litigated outside of this Court in the Injunction Court Action and the Defendant would be prejudiced if these matters were not brought forth in front of a jury, as Defendant wishes to proceed in the State Court setting had Plaintiff properly requested stay of relief or removed the action to the District court.

**Legal Standard**

Proceedings before a bankruptcy judge are either core or non-core. 28 U.S.C. §157. A bankruptcy judge may enter a final order or judgment in a core proceeding. In a non-core proceeding, absent consent of the parties, the bankruptcy judge may not enter a final order or judgment but may only submit proposed findings of fact and conclusions of law to the district judge who will enter the final order or judgment. 28 U.S.C. §157(c)(1).

The amendment to subdivision (a) of this rule requires an allegation as to whether a proceeding is core or non-core. A party who alleges that the proceeding is non-core shall state whether the party does or does not consent to the entry of a final order or judgment by the bankruptcy judge. Failure to include the statement of consent does not constitute consent. Only express consent in the pleadings or otherwise is effective to authorize entry of a final order or judgment by the bankruptcy judge in a non-core proceeding. Amendments to Rule 7012 require that the defendant admit or deny the allegation as to whether the proceeding is core or non-core.

**WHEREFORE**, Faith Elyzabeth Antonio respectfully notifies this Court that she does not consent to the entry of final orders or judgment on matters stayed in the State Action.

Dated: 11th day of August 2021

Respectfully submitted,

Faith Elyzabeth Antonio
**Pro Se Defendant**
Faithantonio.legal@gmail.com
3564 Dove Hollow Ct
Palm Harbor, FL 34683

<u>**Certificate of Service**</u>

I hereby certify that the foregoing **STATEMENT OF NON-CONSENT** was served via email on August 11, 2021, to Allison Thompson (athompson@solomonlaw.com) of The Solomon Law Group, attorney for DGP Products, Inc. dba Numeric Racing.

Faith Elyzabeth Antonio
**Pro Se Defendant**
Faithantonio.legal@gmail.com
3564 Dove Hollow Ct
Palm Harbor, FL 34683

# Exhibit "A"

**Nikki Alvarez-Sowles, Esq.**
**Pasco County Clerk & Comptroller**

New Search Expand All

| Case Number | Filed Date | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|
| 512020CA000889CAAXWS [2020CA000889CAAXWS] | 04/02/2020 | Circuit Civil 3-D | OPEN | NO | YES |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 04/02/2020 | Other Civil | YES | NO | - |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| BYRD, KIMBERLY SHARPE | JUDGE | | |
| NUMERIC RACING Search This Party | ALSO KNOWN AS | | |
| ANTONIO, FAITH ELYZABETH Search This Party | DEFENDANT | | |
| DGP PRODUCTS INC. Search This Party | PLAINTIFF | SOLOMON, STANFORD R | 302147 |

**Dockets**

Page : 1 10

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 56 | 05/18/2021 | Order For Withdrawal As Attorney Of Record | 1 |
| | 55 | 05/11/2021 | Stipulation DF | 1 |
| | 54 | 10/14/2020 | Notice of Cancellation of Deposition | 1 |
| | 53 | 10/13/2020 | Suggestion of Pending Bankruptcy FILED BY DEF | 1 |
| | 52 | 10/09/2020 | Memorandum Of Law FILED BY DGP PRODUCTS INC. | 4 |
| | 51 | 10/07/2020 | Amended Complaint PL | 95 |
| | 50 | 10/01/2020 | Attorney Cover Letter without Attachments | 1 |
| | 49 | 10/01/2020 | Order For Substitution Counsel | 1 |
| | 48 | 10/01/2020 | Notice of Cancellation of Deposition PL | 1 |
| | 47 | 10/01/2020 | Notice of Cancellation of Deposition PL | 1 |

**Judge Assignment History**

**Court Events**

**Financial Summary**

**Reopen History**

** Pursuant to Florida Statutes and Florida Rules of Court Procedure, records that have been designated as expunged, sealed or confidential may not be available through this service. For additional information on specific records please contact the Clerk of Court.

Privacy - Terms

Filing # 114616013 E-Filed 10/07/2020 05:14:35 PM

IN THE CIRCUIT COURT FOR PASCO COUNTY, FLORIDA
CIVIL ACTION

**DGP PRODUCTS INC. d/b/a NUMERIC RACING,**

Plaintiff,

v.

CASE NO: 20-CA-000889-CA-AXWS
DIVISION: G

**FAITH ELYZABETH ANTONIO,**

Defendant.
_______________________________________/

# AMENDED COMPLAINT

DGP Products Inc. d/b/a Numeric Racing ("**DGP**") sues Faith Elyzabeth Antonio a/k/a a/k/a Antonio Faith a/k/a Antonia Faith a/k/a Faith Lee a/k/a Elizabeth Martin a/k/a Elizabeth Lee ("**Antonio**"), and alleges:

## JURISDICTION AND PARTIES

1. This is an action for damages in excess of $30,000.00, exclusive of attorneys' fees and costs, asserting claims for civil theft, conversion, and unjust enrichment.

2. Antonio maintains her primary residence in Pinellas County, Florida.

3. This Court has jurisdiction over the subject matter of this action and the parties hereto because the facts giving rise to support the causes of action alleged herein were performed in or directed from Pasco County, Florida.

## FACTS RELEVANT TO ALL CLAIMS

### *Relationship between DGP, Geberth, and Antonio*

4. DGP is a business incorporated in the State of Florida and regularly does business under the fictitious name "Numeric Racing".

5. Founded in December 2011 by Daniel Geberth ("**Geberth**"), DGP manufactures aftermarket products for Porsche vehicles.

6. On May 26, 2014, Geberth met Antonio and they commenced a romantic relationship.

7. In January 2015, Antonio began working full-time for DGP as an employee in the position of a manager.

8. Antonio's primary job duties for DGP included managing the accounting and the finance functions for DGP. In her management role, Antonio was also responsible for paying bills, answering calls, taking orders, posting advertisements for DGP products on online forums, and packaging products for shipment to DGP customers.

9. Antonio had regular and routine contacts throughout the ordering process. A compilation of emails and other online interactions between Antonio and DGP's customers is attached hereto as Composite Exhibit "**A**".

10. In connection with Antonio's performance of her job duties for DGP, Antonio had ready and regular access to DGP's authorized financial and accounting software, and to DGP's checkbooks and online accounts.

11. Antonio utilized this access and knowledge gained from that access to engage in a campaign of theft, embezzlement, misappropriation, and otherwise improper utilization of DGP's funds for Antonio's own, unauthorized benefit.

***First Wrongful Charges***

12. Antonio began making wrongful charges on DGP's account(s) during the first few days of her employment with DGP. Antonio's early fraud was initially overlooked for legitimate business expenses because the charges were made to Staples, Home Depot, Lowe's, and Quill

(an online office supply store). However, on closer examination, the goods and products purchased by Antonio with funds from DGP's account(s) were never delivered to, seen by, or used for DGP; instead, the goods and products purchased with funds from DGP's account(s) were sent directly to Antonio's home.

13. After a few months of these relatively nominal but nonetheless unauthorized purchases, Antonio became more brazen.

14. From June 19, 2015 through June 24, 2015, Antonio made a series of payment transactions to BMG Orlando, an entity unrelated and unknown to DGP, from DGP's Synovus Bank account (the "**Synovus Bank Account**") totaling $5,000.00.

15. These charges to BMG Orlando appear to be the first large purchases disguised as business transactions through which Antonio stole, embezzled, and misappropriated tens of thousands of dollars from DGP.

***Payment of Personal Expenses and Bills- -DGP's Synovus Bank Account***

16. Antonio's misuse and misappropriation of DGP's funds and financial accounts did not end with those charges to BMG Orlando. Antonio thereafter continued to use DGP's financial accounts to pay for personal expenses, both large and small.

17. Beginning in late 2015, Antonio began using routinely DGP's Synovus Bank Account to pay for her own personal expenses, without authorization or justification. A compilation of unexplained or unauthorized purchases on DGP's Synovus Bank Account is attached hereto as Exhibit "**B**".

18. Among other things, Antonio used DGP's Synovus Bank Account to pay for: substantial charges from a pet hospital, a trip to Busch Gardens, a personal debt, phone repair charges, credit card charges on Antonio's Best Buy Credit Card account[1] and Antonio's Merrick Bank account,[2] auto loan payments to Capital One Auto Finance,[3] car repairs, manicures, spa treatments, groceries, and other personal expenses. None of these purchases were authorized or approved by DGP and none of these charges represents a legitimate business expense.

19. Antonio wrongfully charged to the Synovus Bank Account the sum of $51,948.17.

***Payment of Personal Expenses and Bills- -DGP's American Express Account***

20. In April 2016, in connection with and for use solely to discharge her job responsibilities for DGP, DGP provided to Antonio an American Express credit card in the name of "Numeric Racing" that was to be paid and was paid by DGP. Antonio was authorized to use this card to pay for legitimate, pre-approved business expenses of DGP.

21. As Antonio did with the Synovus Bank Account, Antonio used DGP's American Express account (the "**AmEx Account**") to pay for her own personal expenses, without authorization or justification. An inventory of unexplained and unauthorized charges made by Antonio on the AmEx Account is attached hereto as Exhibit "**C**".

22. Many of the AmEx charges are for purchases that are clearly not related to Numeric Racing or to DGP. Among other charges, Antonio used the AmEx Account to pay expenses associated with a trip to Walt Disney World and to Universal Orlando (including

---

[1] DGP has never had a Best Buy Credit Card. Checks written from DGP's Synovus Bank Account to Best Buy reflect on their face that the DGP payments were made in payment of an account ending in 7351. Antonio coded these DGP payments as "Faith Credit Card" and as "Faith Best Buy Credit Card".

[2] DGP has never had an account with Merrick Bank. Checks written to Merrick Bank (see below) indicate that DGP payments were made in payment of an account ending in 5783.

[3] DGP has never had an auto loan and has never been obligated to make payments to Capital One Auto Finance.

payments for annual passes), for a Carnival cruise, for hotel stays and vacations, for rental cars and flights, for movie tickets, for her cell phone bill, for beauty products, for subscriptions to Adobe Creative Cloud (and other apps), for social activities like painting classes, for crafting supplies, for groceries and meals at restaurants.

23. Antonio wrongfully charged $33,244.59 to the AmEx Account, without authorization or justification.

***ATM Withdrawals***

24. Antonio's wrongdoing did not end with wrongful charges to DGP's financial accounts.

25. During Antonio's employment with DGP, Antonio made a series of ATM withdrawals from the Synovus Bank Account, without authorization or justification. An inventory of unauthorized ATM withdrawals made by Antonio is attached hereto as Exhibit "**D**". [4]

26. On November 12, 2019 and November 13, 2019, after Antonio's employment with DGP was terminated, Antonio made two more wrongful ATM withdrawals before she lost access to DGP's accounts.

27. In total, Antonio wrongfully withdrew $26,380.00 from DGP's Synovus Bank Account.

---

[4] In 2017, at Antonio's request and with limited authorization from DGP, Antonio began to pay herself in cash for her work. To the extent that these ATM withdrawals were equal to Antonio's regular and established wage compensation, these authorized withdrawals have been excluded from the accounting of wrongful charges in Exhibit "**D**".

### *Forged Checks*

28. In connection with Antonio's employment by DGP, Antonio had access to QuickBooks, a financial/accounting software program for businesses that allow authorized users to print and issue DGP checks. Quickbooks automatically generates entries for all checks created by the software program and all authorized checks were to be made through this process.

29. To conceal Antonio's unauthorized use of DGP funds to issue checks, Antonio obtained and created multiple Quickbooks accounts, using free trials versions of the software program to print checks with DGP's account information, and then manually import the charge (with or without the actual check image) into DGP's authorized accounting software. An inventory of the checks manually imported into Quickbooks is attached hereto is Exhibit "E".

30. Antonio made out and forged many of these manually-imported checks to Antonio herself. Antonio also used other checks to pay Antonio's personal credit card charges to with Merrick Bank, CreditOne Bank,[5] and Best Buy, as well as to pay SunCoast Traffic School and Palm Harbor Football Booster Club.

31. Antonio utilized a stamp or a photo editing program that Antonio acquired clandestinely using DGP's funds, to affix Geberth's signature to these unauthorized checks.

32. In total, Antonio withdrew $40,062.32 from DGP's accounts utilizing forged checks.

[5] DGP has <u>never</u> had an account with CreditOne Bank. Checks written from DGP's Synovus Bank Account to CreditOne Bank reflect on their face that payments were made in payment of an account ending in 2218. Later checks written from DGP's Synovus Bank Account reflect "Antonio 2218" on the check memo line, along with the full account number.

***Innisbrook Resort and Country Club***

33. In May 2017, Antonio began using DGP funds to pay substantial sums of money to Innisbrook Resort and Country Club ("**Innisbrook**"), using the same secondary Quickbooks accounts described above. An inventory of payments Antonio made to Innisbrook is attached hereto as Exhibit "**F**".

34. In DGP's financial accounting software, Antonio categorized these charges as "advertising for DGP". However, based on the Innisbrook membership number written at the bottom of some of the checks, these funds were actually used to pay membership charges at Innisbrook for Antonio and her family.

35. Between May 2017 and December 2018, Antonio spent $4,369.88 on expenses that Antonio represented to be for "advertising of DGP" in Innisbrook publications. One Innisbrook publication that Antonio claimed was paid for "DGP advertising" was the "the Innisbrook Salamander Magazine". "The Innisbrook Salamander Magazine" does not exist.

36. The payments made by Antonio to Innisbrook were manually entered into DGP's legitimate Quickbooks account as charges to "Opening Balance Equity", "Advertising", "Uncategorized Expense", and "Packing Materials." Some of the payments made by Antonio to Innisbrook were further misleadingly categorized by Antonio in DGP's accounting software as payments to Uline, rather than to Innisbrook.

37. In addition to concealing payments made by Antonio to Innisbrook, Antonio also used Innisbrook's vendor information to conceal other payments of her personal expenses. For example, on April 10, 2018, Antonio paid $531.29 toward her Best Buy credit card, but categorized the expense as advertising in Innisbrook publications.

38. As with other checks that Antonio forged, Antonio affixed Geberth's signature to the Innisbrook checks by means of a stamp or a photo editing program.

39. Antonio was able to conceal these transfers and fraudulent purchases for years due to her access to and control of the accounting and record keeping for DGP, in her capacity as an employee of DGP.

***Discovery of the Theft and Termination of Employment***

40. Antonio utilized her full access to and control of the financial documentation and accounting software of DGP to conceal her theft and misappropriation. Unbeknownst to DGP, while Antonio was employed by and worked at DGP, Antonio was operating multiple separate QuickBooks accounts, all of which recorded transactions.

41. In December 2018, Antonio made a payment to Innisbrook. Antonio claimed that this payment was for advertising of a golf banner inside a magazine titled the "the Innisbrook Salamander Magazine". When Geberth looked closer at the check, Geberth discovered that Antonio had forged his signature on the check. Antonio claimed that Geberth had authorized her to sign his name via a stamp. Geberth denied that he had ever given Antonio permission to sign his name and informed Antonio that she was not permitted to use a signature stamp. This payment was the first time that Geberth suspected that Antonio was misappropriating DGP funds.

42. Over the next several months, Geberth investigated Antonio's use of DGP funds. However, he waited to act on his suspicions until he had solid proof of wrongdoing to prevent Antonio (who had control over DGP's website, financial accounts, and social media accounts) from further damaging DGP or its business.

43. On November 11, 2019, DGP terminated Antonio's employment.

44. As of August 2020, DGP has been able to uncover **$159,004.96** that was stolen, embezzled or misappropriated by Antonio during her employment at DGP. Antonio's theft has required DGP to amend and refile its federal income tax returns for all the years in which Antonio worked for DGP.

45. On August 13, 2020, DGP sent to Antonio an updated civil theft demand letter demanding repayment of this amount, in accordance with and pursuant to section 772.11, Florida Statutes. A copy of the civil theft demand letter is attached as Exhibit "**G**". Antonio has not responded to the civil theft demand letter.

46. DGP has retained The Solomon Law Group, P.A. to represent it in this action and is obligated to pay The Solomon Law Group, P.A. a reasonable fee for their services.

47. All conditions precedent to commencement and prosecution of the claims asserted in this Amended Complaint have been satisfied, discharged, or otherwise waived.

**COUNT I – Civil Theft**

48. DGP realleges and incorporates into this Count I the allegations set forth in paragraphs 1-47 above, as though fully set forth herein.

49. This is an action against Antonio seeking treble damages for civil theft.

50. Antonio intentionally and knowingly obtained no less than $159,004.96 of DGP's funds with the intent to permanently deprive DGP of such funds and for her benefit.

51. Antonio had no entitlement or authorized access to DGP's funds and assets, outside using DGP's money to pay for DGP's legitimate business expenses. However, Antonio used this money for her own benefit.

52. DGP has suffered and continues to suffer damages as a result of Antonio's theft of DGP's money.

WHEREFORE, DGP demands judgment be entered against Antonio for treble damages, interest, attorneys' fees and costs, and for all other relief the Court deems appropriate.

**COUNT II – Conversion**

53. DGP realleges and incorporates into this Count II the allegations set forth in paragraphs 1-47 above, as though fully set forth herein.

54. This is an action against Antonio seeking damages for conversion.

55. Antonio intentionally and wrongfully deprived DGP of property belonging to DGP when Antonio took money from DGP's bank accounts to pay for non-business expenses, used DGP's credit cards without authorization, permission, or justification, and misled DGP regarding the use of certain funds, all to the detriment of DGP and to the benefit of Antonio.

56. Antonio converted no less of $159,004.96 of DGP's funds, both through direct transfers and unauthorized purchases with DGP's corporate accounts.

57. DGP has demanded that Antonio return DGP's property. Antonio has failed and refused to do so.

58. DGP has suffered and continues to suffer damages as a result of Antonio's conversion of DGP's property.

WHEREFORE, DGP demands judgment be entered against Antonio for damages, interest, costs, and for all other relief the Court deems appropriate.

**COUNT III – Unjust Enrichment**

59. DGP realleges and incorporates into this Count III the allegations set forth in paragraphs 1-47 above as though fully set forth herein.

60. This is an action against Antonio seeking damages for unjust enrichment.

61. DGP hired Antonio to provide accounting and bookkeeping services.

62. Antonio used her position and her access to DGP's financial accounts to take without authorization no less than $159,004.96 of DGP's funds for her own personal benefit.

63. It would be inequitable for Antonio to retain the funds she received and the goods she purchased with DGP's money.

WHEREFORE, DGP demands judgment be entered against Antonio for damages, interest, costs, and for all other relief the Court deems appropriate.

Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147
Katherine M. Johnson
kjohnson@solomonlaw.com
Florida Bar No. 1011648
**THE SOLOMON LAW GROUP, P.A.**
1881 West Kennedy Boulevard, Suite D
Tampa, Florida 33606-1611
(813) 225-1818 (Tel)
(813) 225-1050 (Fax)
Attorneys for **DGP PRODUCTS INC.**

**Certificate of Service**

I certify that a copy of the foregoing **AMENDED COMPLAINT** has been filed and served through the Florida Courts e-Filing Portal upon: Gino A. Megna [via email: gino.megna@tampabay.rr.com] on October 7, 2020.

Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147