UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| IN RE:<br><br>FAITH ELYZABETH ANTONIO,<br><br>Debtor. | Case No: 8:20-BK-07637<br>Chapter 7 |
| DGP PRODUCTS INC. D/B/A NUMERIC RACING,<br>Plaintiff,<br><br>vs.<br><br>FAITH ELYZABETH ANTONIO,<br><br>Defendant. | Adversary Case No:<br>8:20-ap-00537-CPM |

**DGP PRODUCTS, INC.'s NOTICE OF REMOVAL**
**AND CORRECTION OF ITEMIZED DEDUCTIONS FROM COMPLAINT**
[Doc# 1]

DGP Products, Inc. ("**DGP**") hereby gives notice to this Court and to Faith Elyzabeth Antonio ("**Debtor**") of the removal of itemized deductions from DGP's Adversary Complaint [Doc# 1] in anticipation of trial. In support, DGP states as follows:

1. On October 13, 2020, Debtor filed a Voluntary Petition of Bankruptcy under Chapter 7 of the Bankruptcy Code.

2. On October 15, 2020, DGP filed its Adversary Complaint against Debtor to Determine Non-Dischargeability of Debt Owed to DGP (the "**Complaint**") [Doc# 1].

3. While the issues and perhaps even the debts listed on the schedules in many bankruptcy cases can be easily discernible, that is certainly not the case in the case at bar.

4. That is because the activity that comprises Debtor's acts of embezzlement occurred during a period of approximately five years. Furthermore, the actual transactions that are attributable to Debtor, as well as, the evidence of Debtor's misconduct are hidden among

thousands and thousands of presumably legitimate business transactions completed in the ordinary course of DGP's business. Last, the methodical and deliberate actions taken by Debtor to hide, to conceal, and to divert attention from her embezzlement altered and infected hundreds of transactions that were not discernible and/or traceable until a detailed examination conducted by the forensic expert could be conducted.

5. Debtor's romantic relationship with DGP's owner, Mr. Geberth, placed debtor in a unique position to have ostensibly unfettered access to personal and critical financial information that enabled and facilitated the illicit actions that Debtor took for her own financial gain. It was not until after termination of Debtor's romantic relationship with Mr. Geberth and Debtor's employment at DGP that Mr. Geberth was able to perceive and to uncover the embezzlement. Even then, not all of the transactions were uncovered; many of the unauthorized transactions were uncovered during the pendency of this adversary proceeding with the assistance of the forensic expert[1].

6. Prior to filing the adversary complaint, SolomonLaw conducted an extensive and thorough interview with Mr. Geberth. Mr. Geberth provided to SolomonLaw documents in support of what Mr. Geberth believed to be unauthorized charges. Mr. Geberth did his own research, conducted his own investigation and addressed questions raised by SolomonLaw designed to ensure the accuracy of the allegations and claims made.

7. When SolomonLaw was presented with the data provided by Mr. Geberth, SolomonLaw categorized the transactions, organized the categories to account for all of the documents supplied by Mr. Geberth, and proceeded with filing an amended complaint in Case No. 20-CA-000889-AXWS in the Sixth Judicial Circuit and subsequently the complaint in

[1] Upon discovery and investigation, DGP's expert Brad Kanter estimates that approximately an additional $53,138.74 was embezzled by Debtor and not included in the Complaint.

this adversary proceeding based on the same transactions. Even then, it is important to note that as soon as the transactions questioned by Debtor were brought to DGP's attention, DGP immediately investigated those transactions and immediately conceded where appropriate and even beyond [Doc# 286].

8. Trial is scheduled for the week of March 14, 2022. The parties have engaged in extensive discovery.

9. After the conclusion of Debtor's deposition and upon further corroboration from DGP's expert, Brad Kanter, DGP submits that the following transactions are not owed to DGP by Debtor and hereby removes the following line items from its demand for damages:

(a) 03/09/2015 Amazon for $16.52 [Doc# 1 at Exhibit "B"];

(b) 06/19/2015 BMG Orlando[2] $1,000.00 [Doc# 1 at Exhibit "B"];

(c) 06/24/2015 BMG Orlando[2] $4,000.00 [Doc# 1 at Exhibit "B"];

(d) 06/26/2015 AT&T for $868.39 [Doc# 1 at Exhibit "B"];

(e) 06/26/2015 Sheraton Orlando for $37.32 [Doc# 1 at Exhibit "B"];

(f) 08/31/2015 Target[3] for $36.97 [Doc# 1 at Exhibit "B"];

(g) 10/07/2015 Amazon for $8.95 [Doc# 1 at Exhibit "B"];

(h) 11/16/2015 Target[3] for $25.44 [Doc# 1 at Exhibit "B"];

(i) 12/23/2015 eBay for $80.00 [Doc# 1 at Exhibit "B"];

(j) 02/17/2016 Amazon for $35.99 [Doc# 1 at Exhibit "B"];

(k) 03/15/2016 Amazon for $23.52 [Doc# 1 at Exhibit "B"];

(l) 03/15/2016 Amazon for $21.16 [Doc# 1 at Exhibit "B"];

---

[2] As stated, a Google® search of "BMG Orlando" directs the searching party to various modeling agencies in Orlando. DGP and SolomonLaw conceded to the contested charge because, in the context of the numerous bogus transactions, the "juice is not worth the squeeze" with respect to this particular transaction [Doc# 503 at Footnote 3].

[3] Mislabeled as this is an Amazon transaction and not a Target transaction.

(m) 05/11/2016 Amazon for $22.14 [Doc# 1 at Exhibit “B”];

(n) 05/18/2016 CH Publications for $150.00 [Doc# 1 at Exhibit “B”];

(o) 08/12/2016 House of Tan[4] for $30.00 [Doc# 1 at Exhibit “B”];

(p) 09/23/2016 Sebring International $200.00 [Doc# 1 at Exhibit “B”];

(q) 10/04/2016 Laptop Screen $100.00 [Doc# 1 at Exhibit “B”];

(r) 12/19/2016 Ultima[5] Automotive for $193.98 [Doc# 1 at Exhibit “B”];

(s) 02/03/2017 Ulta Beauty for $135.43 [Doc# 1 at Exhibit “B”];

(t) 02/10/2017 SnugMug for $50.00 [Doc# 1 at Exhibit “B”];

(u) 05/17/2017 Custom Tee Sakes for $30.94 [Doc# 1 at Exhibit “B”];

(v) 08/24/2017 Anytime Fitness for $497.98 [Doc# 1 at Exhibit “B”];

(w) 09/06/2017 Exxon Mobile for $20.00 [Doc# 1 at Exhibit “B”];

(x) 01/29/2018 Custom Ink for $317.55 [Doc# 1 at Exhibit “B”];

(y) 02/26/2018 Big Frog for $61.42 [Doc# 1 at Exhibit “B”];

(z) 02/26/2018 Racetrack for $25.61 [Doc# 1 at Exhibit “B”];

(aa) 03/19/2018 UBreakIFix for $93.29 [Doc# 1 at Exhibit “B”];

(bb) 03/26/2018/ Paypal for $935.50 [Doc# 1 at Exhibit “B”];

(cc) 04/10/2018 Dropbox for $2.53 [Doc# 1 at Exhibit “B”];

(dd) 07/10/2018 Dropbox for $40.00 [Doc# 1 at Exhibit “B”];

(ee) 09/16/2019 Park N Cruise for $60.65 [Doc# 1 at Exhibit “B”];

(ff) 06/15/2016 Office Depot for $99.99 [Doc# 1 at Exhibit “C”];

(gg) 09/08/2016 Office Depot for $745.52 [Doc# 1 at Exhibit “C”];

[4] Uncertain as to whether this expense belongs to Debtor or not, however, excluded for the same reasons as BMG Orlando related expenses.

[5] Mislabeled as this is a purchase from Ulta Beauty.

(hh) 05/13/2017 Target for $26.72 [Doc# 1 at Exhibit "C"];

(ii) 09/02/2017 Universal Studios[6] for $958.44 [Doc# 1 at Exhibit "C"];

(jj) 09/02/2017 Universal Studios[6] for $553.78 [Doc# 1 at Exhibit "C"];

(kk) 09/02/2017 O'Charleys Orlando[6] for $134.04 [Doc# 1 at Exhibit "C"];

(ll) 09/03/2017 Kobe I Drive[6] for $272.58 [Doc# 1 at Exhibit "C"];

(mm) 09/03/2017 Cowfish[6] for $132.80 [Doc# 1 at Exhibit "C"];

(nn) 09/03/2017 Westgate Orlando[6] for $44.73 [Doc# 1 at Exhibit "C"];

(oo) 09/03/2017 Kobe I Drive[6] for $26.73 [Doc# 1 at Exhibit "C"];

(pp) 09/03/2017 SF Candy Factory[6] for $119.17[Doc# 1 at Exhibit "C"]

(qq) 09/04/2017 Toothsome's Chocolate Emporium[6] for $51.85 [Doc# 1 at Exhibit "C"];

(rr) 09/06/2017 The Cat Hospital for $273.00[Doc# 1 at Exhibit "C"];

(ss) 01/04/2018 iTunes Media for $80.00[Doc# 1 at Exhibit "C"];

(tt) 01/04/2018 DropBox for $9.99 [Doc# 1 at Exhibit "C"];

(uu) 02/07/2018 Office Depot for $159.98 [Doc# 1 at Exhibit "C"];

(vv) 02/26/2018 DropBox for $9.99 [Doc# 1 at Exhibit "C"];

(ww) 04/30/2018 Dropbox for $9.99 [Doc# 1 at Exhibit "C"];

(xx) 06/30/2018 DropBox for $9.99 [Doc# 1 at Exhibit "C"];

(yy) 07/31/2018 DropBox for $9.99 [Doc# 1 at Exhibit "C"];

(zz) 07/31/2018 Fandango for $30.48 [Doc# 1 at Exhibit "C"];

---

[6] At some point during their 5-year relationship, Debtor and Daniel Geberth travelled together to Orlando, Florida. DGP submits that Debtor was not authorized to utilize freely at her whim DGP's American Express card. Further, DGP did not preauthorize purchases in Orlando, Florida. In fact, any expenses incurred by Daniel Geberth while travelling with Debtor to Orlando were charged to Mr. Geberth's personal account and not DGP's. Nonetheless, it is not worth the effort at trial to dispute these expenses.

(aaa) 12/22/2018 Amazon for $50.94 [Doc# 1 at Exhibit "C"];

(bbb) 05/01/2019 Promo for $49.00 [Doc# 1 at Exhibit "C"];

(ccc) 05/07/2019 Promo for $49.00 [Doc# 1 at Exhibit "C"];

(ddd) 06/25/2019 Amazon for $62.51 [Doc# 1 at Exhibit "C"];

(eee) 08/03/2019 Amazon for $197.14 [Doc# 1 at Exhibit "C"];

(fff) 05/11/2016 check number 1863[7] for $600.00 [Doc# 1 at Exhibit "E"];

(ggg) 08/08/2016 check number 1876 for $100.00 [Doc# 1 at Exhibit "E"];

(hhh) 05/29/2017 check number 1921[8] for $600.00 [Doc# 1 at Exhibit "E"];

(iii) 02/19/2018 check number 2014[9] for $1,080.00 [Doc# 1 at Exhibit "E"];

(jjj) 07/18/2019 check number 2092[10] for $1,730.00 [Doc# 1 at Exhibit "E"]; and

(kkk) 05/31/2017 check number 2089 for $600.00 [Doc# 1 at Exhibit "G"].

For a total of $17,999.63 [11].

10. DGP has been unable to recover any of the funds stolen, embezzled or misappropriated by Debtor during her employment at DGP [Doc# 1 at ¶51]. DGP asserted in the Complaint that the total amount owed by Debtor was $172,327.00. That amount is now revised and reduced to $154,327.37 to deduct the itemized transactions listed at ¶9 above[12].

---

[7] FIS (Floor Installation Services).
[8] Duplicate entry.
[9] Camtech Engineering Services.
[10] Zeigler Transmission.
[11] Upon information and belief, DGP submits that the ATM withdrawals for the years of 2015 and 2016 listed at Exhibit "D" represent wages paid to Debtor by DGP. ATM withdrawals which exceed the authorized wages are still being claimed as funds embezzled (Debtor had additional ATM withdrawals that exceeded the agreed upon wages. Specifically, $4,100 during 2017; $15,040 during 2018; and $24,340 during 2019). While the funds listed at Exhibit "D" for 2015 and 2016 are believed to be wages to Debtor, to the extent that any excess compensation was not authorized by DGP, DGP intends to use these transactions as evidence during trial.
[12] The itemized transactions listed at ¶9 total of $17,999.63.

11. Moreover, the following transactions contain scrivener errors that must be corrected[13,14] as follows:

(a) 01/12/2015 should be a charge of $124.87 and not $134.87 [Doc# 1 at Exhibit "B"];

(b) 09/28/2015 should be a charge for $5.98 and not $5.96 [Doc# 1 at Exhibit "B"];

(c) 11/12/2015 vendor should be Amazon and not Target [Doc# 1 at Exhibit "B"];

(d) 11/23/2015 should be a charge for $29.28 and not $29.38 [Doc# 1 at Exhibit "B"];

(e) 12/18/2015 vendor should be Amazon and not Target [Doc# 1 at Exhibit "B"];

(f) 01/15/2016 should be a charge for $143.09 and not $143.10 [Doc# 1 at Exhibit "B"];

(g) 02/01/2016 should be a charge for $43.31 and not $5.96 [Doc# 1 at Exhibit "B"];

(h) 02/17/2016 should be a charge for $146.35 and not $148.35 [Doc# 1 at Exhibit "B"];

(i) 02/24/2016 should be a charge for $13.48 and not $13.78 [Doc# 1 at Exhibit "B"];

[13] Although many of the corrections are just a pennies off the original amount listed, given the procedural history of this matter, it is best to correct to avoid any issues at trial.

[14] For an adjusted total deducting $59.64. That is because the total of the transactions at ¶ 11 above was $2,940.88 and has now been corrected to total $2,880.44, which represents a difference of $59.64.

(j) 02/24/2016 should be a charge for $207.94 and not $207.95 [Doc# 1 at Exhibit "B"];

(k) 03/07/2016 should be a charge for $42.65 and not $41.65 [Doc# 1 at Exhibit "B"];

(l) 03/11/2016 should be a charge for $46.72 and not $46.92 [Doc# 1 at Exhibit "B"];

(m) 04/01/2016 should be a charge for $117.98 and not $117.08 [Doc# 1 at Exhibit "B"];

(n) 09/06/2017 vendor should be Parking and not Exxon Mobil [Doc# 1 at Exhibit "B"];

(o) 09/11/2017 vendor should be Loves and not Exxon Mobil [Doc# 1 at Exhibit "B"];

(p) 10/19/2017 should be moved to Exhibit "E" to the Complaint as it is check number 1960 [Doc# 1 at Exhibit "B"];

(q) 01/02/2018 should be a charge for $59.32 and not $50.32 [Doc# 1 at Exhibit "B"];

(r) 01/05/2018 should be a charge for $556.48 and not $556.40 [Doc# 1 at Exhibit "B"];

(s) 03/20/2018 should be a charge for $478.38 and not $479.38 [Doc# 1 at Exhibit "B"];

(t) 04/25/2018 should be a charge for $36.13 and not $56.13 [Doc# 1 at Exhibit "B"];

(u) 05/17/2019 should be a charge for $7.96 and not $7.56 [Doc# 1 at Exhibit "B"];

(v) 05/28/2019 should be a charge for $57.78 and not $57.76 [Doc# 1 at Exhibit "B"];

(w) 05/06/2016 should be a charge for $108.28 and not $108.25 [Doc# 1 at Exhibit "C"];

(x) 06/19/2016 should be a charge for $58.01 and not $58.91 [Doc# 1 at Exhibit "C"];

(y) 07/11/2016 should be a charge for $62.90 and not $69.90 [Doc# 1 at Exhibit "C"];

(z) 08/18/2016 should be a charge for $155.15 and not $155.16 [Doc# 1 at Exhibit "C"];

(aa) 08/20/2016 should be a charge for $42.76 and not $42.57 [Doc# 1 at Exhibit "C"];

(bb) 01/01/2018 should be a charge for $30.08 and not $30.06 [Doc# 1 at Exhibit "C"];

(cc) 01/19/2018 should be a charge for $3.20 and not $3.29 [Doc# 1 at Exhibit "C"];

(dd) 02/23/2018 should be a charge for $40.98 and not $40.99 [Doc# 1 at Exhibit "C"];

(ee) 02/23/2018 should be a charge for $1.83 and not $1.63 [Doc# 1 at Exhibit "C"];

(ff) 02/27/2018 should be a charge for $8.78 and not $8.76 [Doc# 1 at Exhibit "C"];

(gg) 03/15/2018 vendor should be Amazon and not Publix [Doc# 1 at Exhibit "C"];

(hh) 05/06/2016 should be a charge for $108.28 and not $108.25 [Doc# 1 at Exhibit "C"];

(ii) 03/27/2018 should be a charge for $8.78 and not $6.76 [Doc# 1 at Exhibit "C"];

(jj) 06/14/2019 should be a charge for $16.02 and not $15.02 [Doc# 1 at Exhibit "C"]; and

(kk) 10/15/2019 should be a charge for $117.69 and not $187.98 [Doc# 1 at Exhibit "C"].

12. The transactions to now be excluded from the Complaint (see ¶9) are nominal and a mere fraction of all of the transactions that demonstrate Debtor's embezzlement when compared to the items remaining in the complaint plus the items uncovered by discovery and the forensic expert in this matter.

**WHEREFORE,** DGP submits its Notice of Removal and Correction of itemized deductions in anticipation of trial.

*/s/ Stanford R. Solomon*
Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147
**THE SOLOMON LAW GROUP, P.A.**
1881 West Kennedy Boulevard, Suite D
Tampa, Florida 33606-1611
(813) 225-1818 (Tel)
(813) 225-1050 (Fax)
Attorneys for **DGP PRODUCTS INC.**

## **Certificate of Service**

I hereby certify that I am admitted to the bar of this Court. I further certify that the foregoing **DGP PRODUCTS INC.'S NOTICE OF REMOVAL OF ITEMIZED DEDUCTIONS FROM COMPLAINT** was filed and served through the CM/ECF system on March 4, 2022 upon Faith Elyzabeth Antonio [Email: faithantonio.legal@gmail.com ], *Pro Se* Defendant.

*/s/ Stanford R. Solomon*
Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147
**THE SOLOMON LAW GROUP, P.A.**
1881 West Kennedy Boulevard, Suite D
Tampa, Florida 33606-1611
(813) 225-1818 (Tel)
(813) 225-1050 (Fax)
Attorneys for **DGP PRODUCTS INC.**